**THE ROSEN LAW FIRM, P.A.**
Laurence Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID LEWIS, Individually and on Behalf of all Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>LIPOCINE INC., MAHESH V. PATEL, and MORGAN R. BROWN,<br><br>Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff David Lewis ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by

1

Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Lipocine Inc. ("Lipocine" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Lipocine securities between June 30, 2015 and June 28, 2016, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its officers and/or directors.

## JURISDICTION AND VENUE

2.    The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

2

3.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.    Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Defendants conduct business and operate within this District and a significant portion of the Defendants' actions, and the subsequent damages, took place within this District.

5.    In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.    Plaintiff, as set forth in the accompanying Certification, purchased Lipocine securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

7.    Defendant Lipocine is a specialty pharmaceutical company, which develops pharmaceutical products using its oral drug delivery technology in the areas of men's and women's health. The Company is a Delaware corporation with offices in Lawrenceville, New Jersey. Lipocine's securities trade on the NASDAQ under the ticker symbol "LPCN."

8.     Defendant Mahesh V. Patel ("Patel") has been the President and Chief Executive Officer ("CEO") of Lipocine throughout the Class Period.

9.     Defendant Morgan R. Brown ("Brown") has been the Executive Vice President and Chief Financial Officer of Lipocine throughout the Class Period.

10.     Defendants Patel and Brown are sometimes referred to herein as the "Individual Defendants."

11.     Defendant Lipocine and the Individual Defendants are referred to herein, collectively, as the "Defendants."

12.     Each of the Individual Defendants:

a.     directly participated in the management of the Company;

b.     was directly involved in the day-to-day operations of the Company at the highest levels;

c.     was privy to confidential proprietary information concerning the Company and its business and operations;

d.     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

e.     was directly or indirectly involved in the oversight or implementation of the Company's disclosure and procedure controls;

4

f.      was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

g.      approved or ratified these statements in violation of the federal securities laws.

13.      Lipocine is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

14.      The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Lipocine under *respondeat superior* and agency principles.

## SUBSTANTIVE ALLEGATIONS

### Background

15.      The Company's lead product candidate, TLANDO™ ("LPCN 1021"), is an oral testosterone replacement therapy designed for twice-a-day dosing that has completed Phase 3 testing.

### Materially False and Misleading Statements

16.      On June 29, 2015, the Company issued a press release during after-market hours announcing the results of its Study of Oral Androgen Replacement

pivotal Phase 3 clinical study evaluating the efficacy and safety of LPCN 1021,

which stated in part:

### Lipocine's Oral Testosterone Well Tolerated in Phase 3 Study

- LPCN 1021 was well tolerated during 52 weeks of dosing
- No reported hepatic, cardiac or drug-related serious adverse events ("SAEs")
- Overall adverse event ("AE") profile for LPCN 1021 was comparable to the active control, Androgel® 1.62%

SALT LAKE CITY, June 29, 2015 (GLOBE NEWSWIRE) -- Lipocine Inc. (NASDAQ:LPCN), a specialty pharmaceutical company, today announced top-line 52-week safety results from its Study of Oral Androgen Replacement ("SOAR") pivotal Phase 3 clinical study (http://clinicaltrials.gov/show/NCT02081300) evaluating efficacy and safety of LPCN 1021, an oral testosterone product candidate, in hypogonadal men with low testosterone. Overall, LPCN 1021 was well tolerated with no hepatic, cardiac or drug-related SAE's reported.

Lipocine announced positive top-line efficacy results from the SOAR study in September 2014. ***The company still expects to file a New Drug Application ("NDA'") with the U.S. Food and Drug Administration ("FDA") in the second half of 2015.***

"We are pleased with the safety profile demonstrated by LPCN 1021. We believe that the efficacy and safety data from the SOAR study reinforces our understanding that LPCN 1021 represents a 'best-in-class' testosterone replacement therapy ("TRT") option with the potential to both improve treatment compliance and overcome inadvertent testosterone transference risk to children and partners," said Dr. Mahesh Patel, Chairman, President and CEO of Lipocine Inc. Dr. Patel further stated, "***We look forward to bringing this important new medicine to patients as we continue to work diligently on filing the NDA.***"

(Emphasis added).

17.    On August 31, 2015, the Company issued a press release announcing

its submission of a New Drug Application ("NDA") for LPCN 1021 to the U.S. Food

and Drug Administration's ("FDA"), which states in part:

**Lipocine Submits New Drug Application to FDA for Its Oral Testosterone Replacement Product Candidate, LPCN 1021**

SALT LAKE CITY, Aug. 31, 2015 (GLOBE NEWSWIRE) -- *Lipocine Inc. (NASDAQ:LPCN), a specialty pharmaceutical company, today announced that it has submitted a 505(b)(2) New Drug Application ("NDA") to the U.S. Food and Drug Administration ("FDA") for LPCN 1021, an oral testosterone product candidate for testosterone replacement therapy ("TRT") in adult males for conditions associated with a deficiency or absence of endogenous testosterone ("hypogonadism").*

"Filing of the NDA for LPCN 1021 is a significant achievement for Lipocine and a major milestone toward bringing this potential testosterone replacement therapy option to patients. LPCN 1021 has the potential both to improve the ease of use compared to the available formulations, including topical gels and injections, and to overcome inadvertent testosterone transference risk to children and partners," said Dr. Mahesh Patel, Chairman, President and CEO of Lipocine Inc. "We look forward to working closely with the FDA during the review process."

The NDA filing is supported by results from Lipocine's Study of Oral Androgen Replacement ("SOAR") pivotal Phase 3 clinical study (http://clinicaltrials.gov/show/NCT02081300) evaluating efficacy and safety of LPCN 1021 in hypogonadal men with low testosterone. The study met its primary efficacy endpoint by successfully restoring testosterone levels to the normal range in 88% of the subjects. In addition, 85% of the subjects reached their final dose with no more than one dose titration. LPCN 1021 treatment was well tolerated with no hepatic, cardiac, gastrointestinal or drug related serious adverse events.

(Emphasis added).

18.    On October 29, 2015, the Company issued a press release announcing the FDA's acceptance of the Company's NDA for LPCN 1021, which stated in part:

**FDA Accepts for Filing Lipocine's New Drug Application for Its Oral Testosterone Replacement Product Candidate, LPCN 1021**

SALT LAKE CITY, Oct. 29, 2015 (GLOBE NEWSWIRE) -- Lipocine Inc. (NASDAQ:LPCN), a specialty pharmaceutical company, today announced that the U.S. Food and Drug Administration ("FDA") has accepted for filing its New Drug Application ("NDA") for LPCN 1021, an oral testosterone product candidate for testosterone replacement therapy ("TRT") in adult males for conditions associated with a deficiency or absence of endogenous testosterone ("hypogonadism"). The acceptance by the FDA of the NDA indicates that the application is sufficiently complete to permit a substantive review.

"FDA acceptance of the NDA for LPCN 1021 is a significant milestone for both Lipocine and the millions of patients that could potentially benefit from an oral testosterone replacement therapy option," said Dr. Mahesh Patel, Chairman, President and CEO of Lipocine Inc. "We will continue to work with the FDA as they complete their review."

19.    On November 12, 2015, the Company filed its quarterly report for the quarterly period ended September 30, 2015 on Form 10-Q with the SEC (the "3Q 2015 10-Q"). The 3Q 2015 10-Q was signed by Defendants Patel and Brown. The 3Q 2015 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Patel and Brown attesting to the accuracy of the 3Q 2015 10-Q. The 3Q 2015 10-Q stated, in part:

The FDA accepted our NDA in October 2015 and has assigned a Prescription Drug User Fee Act ("PDUFA") goal date of June 28, 2016 for completion of the review. Additionally, the 74-day filing communication letter did not mention a need to convene an Advisory Committee for advice on the NDA for LPCN 1021.

20.    On March 10, 2016, the Company filed its annual report for the fiscal year ended December 31, 2015 on Form 10-K with the SEC (the "2015 10-K"). The 2015 10-K was signed by Defendants Patel and Brown. The 2015 10-K contained signed SOX certifications by Defendants Patel and Brown attesting to the accuracy of the 2015 10-K. The 2015 10-K stated, in part:

> The FDA accepted our NDA in October 2015 and has assigned a PDUFA goal date of June 28, 2016 for completion of the review. Additionally, the 74-day filing communication letter did not mention a need to convene an Advisory Committee for advice on the NDA for LPCN 1021. We also expect to file a New Drug Submission in Canada during the second half of 2016 for LPCN 1021.

21.    On April 12-13, 2016, the Company presented at the 15th Annual Needham Healthcare Conference. The Company's presentation highlighted the FDA's review of LPCN 1021 in the following slides:

## Lipocine Investment Highlights

### First oral TRT option under FDA review with a PDUFA goal date of June 28, 2016

- Differentiated product targeting ~$2.0 Billion established US TRT market
- Targets unmet need with first entrant advantage
- Robust clinical data with branded market leader as active control

### Pipeline assets advancing towards "Phase 3 ready" status

- LPCN 1111 - QD oral TRT option currently in Phase 2b
- LPCN 1107 Orphan designated oral alternative for the prevention of preterm birth
  - Potential to optimize clinical outcomes
  - Avoids painful injections and injection site reaction

LIPOCINE™
ENHANCING HEALTH

3

## LPCN: Focused on Innovative Products for Men's and Women's Health



| "Transformative" Oral Testosterone Franchise | | | First Oral Alternative for the Prevention of Pre-Term Birth | | |
|---|---|---|---|---|---|
| PRODUCT (Indication) | RESEARCH / PRECLINICAL | PHASE 1 | PHASE 2 | PHASE 3 | NDA UNDER REVIEW |
| **MEN'S HEALTH** | | | | | |
| LPCN 1021 (Oral Testosterone Replacement Therapy) | | | | | PDUFA Goal Date: June 28, 2016 |
| LPCN 1111 (Next Generation Oral T) | | | | | |
| **WOMEN'S HEALTH** | | | | | |
| LPCN 1107 (Prevention of Preterm Birth) | | | | | |

LIPOCINE™
ENHANCING HEALTH

4

22.    On May 9, 2016, the Company filed its quarterly report for the quarterly period ended March 31, 2016 on Form 10-Q with the SEC (the "1Q 2016 10-Q"). The 1Q 2016 10-Q was signed by Defendants Patel and Brown. The 1Q 2016 10-Q contained signed SOX certifications by Defendants Patel and Brown attesting to the accuracy of the 1Q 2016 10-Q. The 1Q 2016 10-Q stated, in part:

> The FDA accepted our NDA in October 2015 and has assigned a Prescription Drug User Fee Act ("PDUFA") goal date of June 28, 2016 for completion of the review. Additionally, the 74-day filing communication letter did not mention a need to convene an Advisory Committee for advice on the NDA for TLANDO. We also expect to file a New Drug Submission in Canada in the second half of 2016.

23.    The statements referenced in ¶¶ 16 - 22 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company's filing of its NDA for LPCN 1021 to the FDA contained deficiencies; and (2) as a result, Defendants' statements about Lipocine's business and operations were false and misleading and/or lacked a reasonable basis.

## The Truth Emerges

24.    On June 29, 2016, the Company issued a press releasing disclosing its receipt of a Complete Response Letter for LPCN 1021 from the FDA, stating in relevant part:

**Lipocine Receives Complete Response Letter (CRL) for LPCN
1021 From U.S. Food and Drug Administration**

SALT LAKE CITY, June 29, 2016 (GLOBE NEWSWIRE) -- Lipocine
Inc. (NASDAQ:LPCN), a specialty pharmaceutical company, today
announced that it has received a Complete Response Letter ("CRL")
from the United States Food and Drug Administration ("FDA")
regarding its New Drug Application ("NDA") for LPCN 1021, an oral
testosterone product candidate for testosterone replacement therapy
("TRT") in adult males for conditions associated with a deficiency or
absence of endogenous testosterone, also known as hypogonadism. A
CRL is a communication from the FDA that informs companies that an
application cannot be approved in its present form.

*__The CRL identified deficiencies related to the dosing algorithm for
the label.  Specifically, the proposed titration scheme for clinical
practice was significantly different from the titration scheme used in
the Phase 3 trial leading to discordance in titration decisions between
the Phase 3 trial and real-world clinical practice.__*

The next step will be to request a meeting with the FDA to understand
more fully the issues raised and to agree on a path forward to achieve
approval of LPCN 1021.

"We are evaluating the content of the CRL, including the FDA
recommended actions to bring our NDA in a position for approval, and
will work closely with the FDA to determine the appropriate next steps
for the NDA.  We remain committed to bringing LPCN 1021 to patients
who will benefit from its intended use," said Dr. Mahesh Patel,
Chairman, President and CEO of Lipocine. "We continue to believe
that LPCN 1021 has the potential to improve the ease of use compared
to the available formulations, including topical gels and injections, and
to overcome inadvertent testosterone transference risk to children and
partners that exist with topical gels.

(Emphasis added).

25.    On this news, shares of Lipocine fell $3.17 per share or over 50% to

close at $3.10 per share on June 29, 2016, damaging investors.

26.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

27.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Lipocine securities trade on the NASDAQ during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

28.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Lipocine securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Lipocine or its transfer agent and may be notified of the pendency of

this action by mail, using the form of notice similar to that customarily used in securities class actions.

29.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

30.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

31.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Lipocine;

- whether the Individual Defendants caused Lipocine to issue false and misleading public statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading public statements;

- whether the prices of Lipocine securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and,

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

32.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

33.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Lipocine securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Lipocine securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

34.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

35.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

36.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

37.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

38.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Lipocine securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Lipocine securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan

17

and course of conduct, Defendants, and each of them, took the actions set forth herein.

39. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Lipocine securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Lipocine's disclosure controls and procedures, business operations, and employee conduct.

40. By virtue of their positions at Lipocine, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each

defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

41.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Lipocine, the Individual Defendants had knowledge of the details of Lipocine's internal affairs.

42.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Lipocine. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Lipocine's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price for Lipocine's securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Lipocine's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Lipocine securities at artificially inflated prices and relied upon the price of the securities, the integrity of

the market for the securities and/or upon statements disseminated by Defendants, and were damaged upon the revelation of the alleged corrective disclosures.

43.    During the Class Period, Lipocine's securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Lipocine securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Lipocine securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Lipocine's securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

44.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

45.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with

their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

46.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

47.     During the Class Period, the Individual Defendants participated in the operation and management of Lipocine, and conducted and participated, directly and indirectly, in the conduct of Lipocine's business affairs. Because of their senior positions, they knew the adverse non-public information regarding Lipocine's business practices.

48.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Lipocine's financial condition and results of operations, and to correct promptly any public statements issued by Lipocine which had become materially false or misleading.

49.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Lipocine disseminated in the

21

marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Lipocine to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Lipocine within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Lipocine securities.

50.    Each of the Individual Defendants, therefore, acted as a controlling person of Lipocine. By reason of their senior management positions and/or being directors of Lipocine, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Lipocine to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Lipocine and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

51.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Lipocine.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post- judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: July 1, 2016                    Respectfully submitted,

                                       **THE ROSEN LAW FIRM, P.A.**

                                       By: /s/ Laurence Rosen
                                       Laurence Rosen, Esq.
                                       609 W. South Orange Avenue, Suite 2P
                                       South Orange, NJ 07079
                                       Tel: (973) 313-1887
                                       Fax: (973) 833-0399
                                       Email: lrosen@rosenlegal.com

                                       Counsel for Plaintiff