IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IN RE LIPOCINE INC. SECURITIES LITIGATION | ) ) Case No. 2:17CV00182 DB ) |
| | ) |
| This Document Relates To: All Actions | ) Judge Dee Benson |
| | ) |
| | ) |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Jeremy A. Lieberman (*pro hac vice*)
Marc I. Gross (*pro hac vice*)
Tamar A. Weinrib (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile:  212-661-8665

**POMERANTZ LLP**
Patrick V. Dahlstrom (*pro hac vice*)
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: 312-377-1181
Facsimile:  312-377-1184

*Lead Counsel*

# TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ................................................................................ 1

II.  SUMMARY OF THE LITIGATION AND SETTLEMENT ............................................ 2

    A.  Procedural History Of The Litigation ........................................................ 2

    B.  Summary Of Key Terms Of The Proposed Settlement ........................................ 4

        1.  Conditional Class Certification .................................................... 4

        2.  Relief to Class Members and Release of Claims .................................... 4

        3.  Class Notice and Settlement Administration ........................................ 5

            a)  Notice ....................................................................... 5

            b)  Administration ............................................................... 6

        4.  Papers in Support of the Settlement, Award of Lead Counsel Fees and Expenses, and Lead Plaintiff Compensatory Awards ................................ 6

        5.  *Objections* .................................................................... 7

        6.  *Opt Outs* ...................................................................... 7

        7.  *Termination of the Settlement* ................................................ 7

        8.  *No Admission of Liability* .................................................... 8

III.  PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE ........................................................................................ 8

    A.  The Courts Favor Settlements Of Complex Class Actions .................................. 8

    B.  The Settlement Was Fairly and Honestly Negotiated ..................................... 10

    C.  The Outcome of the Litigation Is Uncertain ............................................ 11

    D.  The Value of a Guaranteed Recovery Outweighs the Possibility of Relief after Protracted and Expensive Litigation .................................................. 13

    E.  The Judgment of the Parties that the Proposed Settlement Is Fair, Adequate, and Reasonable ........................................................................... 14

IV.  THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE ................................................................................... 14

V.  PROPOSED SCHEDULE OF EVENTS .................................................................. 16

VI.  CONCLUSION .......................................................................................... 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashley v. Reg'l Transp. Dist., Civil*
No. 05-cv-01567-WYD-BNB, 2008 U.S. Dist. LEXIS 13069 (D. Colo. Feb.
11, 2008) ...............................................................................................................10, 14

*Carson v. Am. Brands, Inc*.,
450 U.S. 79 (1981)..................................................................................................8

*Clark v. Lomas & Nettleton Fin. Corp.*,
79 F.R.D. 641 (N.D. Tex. 1978) ...........................................................................13

*Faircloth v. Certified Fin. Inc.*,
No. CIV. A. 99-3097, 2001 WL 527489 (E.D. La. May 16, 2001).......................11

*Gottlieb v. Wiles*,
11 F.3d 1004 (10th Cir. 1993) ...............................................................................13

*In re Corrugated Container Antitrust Litigation*,
643 F.2d at 195, 1981 U.S. App LEXIS 14634. ....................................................11

*In re Crocs, Inc. Sec. Litig*.,
No. 07-cv-02351-PAB-KLM, 2013 WL 4547404 (D. Colo. Aug. 28, 2013) ........12

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007)...........................8

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
No. 02 MDL 1484 (JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)..................13

*In re Motor Fuel Temperature Sales Practices Litig.*,
286 F.R.D 488 (D. Kan. 2012)................................................................................9

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................14

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
625 F. Supp. 2d 1133 (D. Colo. 2009)...................................................................12

*In re Sprint Corp. ERISA Litig.*,
443 F. Supp. 2d 1249 (D. Kan. 2006).....................................................................11

*Jones v. Nuclear Pharmacy, Inc*.,
741 F.2d 322 (10th Cir. 1984) ...............................................................................10

*Lucas v. Kmart Corp.*,
  234 F.R.D. 688 (D. Colo. 2006) ...................................................................9, 10, 12

*McPhail v. First Command Fin. Planning, Inc.*,
  No. 05cv179-IEG- JMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) .................................14

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)........................................................................................14

*Nakkahumpun v. Taylor*,
  No. 12-cv-01038-CMA, 2015 WL 6689399 (D. Colo. Nov. 3, 2015) ....................................9

*Nieberding v. Barrette Outdoor Living, Inc.*,
  No. 12-CV-2353-DDC-TJJ, 2015 WL 1645798 (D. Kan. Apr. 14, 2015) ...............................9

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
  314 F.3d 1180 (10th Cir. 2002) .....................................................................8, 10

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003)....................................................................13

**Statutes**

15 U.S.C. §78j(b) ...........................................................................................3

15 U.S.C., §78t(a) ..........................................................................................3

15 U.S.C. §78u-4(a)(7) ....................................................................................16

**Rules**

Fed. R. Civ. P. 23 .........................................................................................15

Fed. R. Civ. P 23(a) and (b)(3) ............................................................................4

Fed. R. Civ. P. 23(b)(1), (b)(2) ..........................................................................14

Fed. R. Civ. P. 23(e) ..................................................................................1, 8, 14

**Other Authorities**

17 C.F.R. § 240.10b-5.......................................................................................3

*Manual For Complex Litigation* (Fourth) (2004) ...........................................................14

*Newberg on Class Actions* (Fourth) (2002) ................................................................10

## I.    <u>PRELIMINARY STATEMENT</u>

Lead Plaintiff Lipocine Investor Group (consisting of members Quantum Partners, Ltd., DPC Partners, Ltd. and John William Burke) (on behalf of themselves and each of the Class Members) ("Lead Plaintiff"), submits this Memorandum of Law in support of its unopposed motion for preliminary approval pursuant to Rule 23(e), Fed. R. Civ. P., of a settlement of this securities fraud class action filed on behalf of purchasers of shares in Lipocine, Inc. ("Lipocine" or the "Company") during the period June 30, 2015 and June 28, 2016, both dates inclusive (the "Class Period"). While Defendants do not oppose the relief sought herein, the analysis and characterizations of the litigation and Settlement are provided only on behalf of Lead Counsel and Lead Plaintiff, and do not necessarily reflect the views of Defendants.

Pursuant to the Stipulation of Settlement dated March 9, 2018 ("Stipulation"), filed contemporaneously herewith, Defendants Lipocine, Mahesh V. Patel, and Morgan R. Brown (collectively "Defendants"), through their insurance carrier(s), have agreed to pay $4,250,000 in cash, as described more fully in the Stipulation, in return for a release of all claims (the "Settlement")[1].  The Stipulation is the result of extensive arms' length negotiations between highly experienced counsel, which included a full day mediation session before Jed Melnick, Esq., of JAMS mediation services.

Lead Plaintiff respectfully submits that the proposed Settlement is fair, reasonable, and adequate, and therefore asks the Court to enter the accompanying [Proposed] Order Preliminarily Approving Settlement and Providing for Notice (the "Notice Order") attached to the Stipulation as Exhibit A. The Notice Order will: (1) preliminarily approve the Settlement as set forth in the Stipulation; (2) approve the form and method for providing notice of the Settlement to the Class;

---

[1] All capitalized terms that are not defined specifically in this memorandum have the same meanings as set forth in the Stipulation.

and (3) schedule a final approval hearing in which the Court will consider the request for final approval of: (a) the Settlement set forth in the Stipulation; (b) the Plan of Allocation of Settlement proceeds among Class Members; (c) Lead Counsel's application for an award of attorneys' fees and expenses; and (d) Lead Plaintiff' application for a reimbursement award.

The proposed Settlement represents an excellent result for Class Members given that its stock price closed at $1.24 on February 23, 2018, that the cost of litigation will significantly reduce the amount of available insurance coverage, and the uncertainty regarding whether the FDA will approve the LPCN 1021 New Drug Application on the May 8, 2018 Prescription Drug User Fee Act date. Despite these "collection" hurdles, Lead Plaintiff was able to secure a recovery representing at least 13.6% of the most likely recoverable damages, which is well within the range of reasonableness for class action settlements.[2] Moreover, given the likelihood that less than 100% of Class Members will file claims, the actual percentage of recovery is even higher. So long as the Settlement appears to be *prima facie* reasonable, Lead Counsel request that the Court preliminarily approve the Settlement so that notice can be sent to all the affected Class Members, who will have a right to be heard at the Final Hearing to be scheduled by the Court.

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.    Procedural History Of The Litigation

This Action was first filed on July 1, 2016 in the District of New Jersey. By order dated December 2, 2016, the Court appointed the Lipocine Investor Group (consisting of members Quantum Partners, Ltd., DPC Partners, Ltd. and John William Burke) as Lead Plaintiff and

---

[2] This estimate is based on the decline in Lipocine's share price on June 29, 2016, following the Company's announcement that it had received a Complete Response Letter from the FDA rejecting the LPCN 1021 NDA, multiplied by the number of Lipocine shares purchased by Class Members during the Class Period and still held by as of that date.

Pomerantz LLP as Lead Counsel. (Docket No. 21). An Amended Complaint was then filed on April 27, 2017 (Docket No. 48), asserting claims against Defendants on behalf of Lipocine investors during the Class Period. During that time frame, Lipocine had sought to obtain FDA approval to market its lead drug product, LPCN 1021, an oral testosterone replacement therapy designed for twice a day dosing.

The Amended Complaint charged that Defendants conduct violated Sections 10(b) and 20(a) of the Securities Exchange Act (15 U.S.C. §§ 78j(b), and 78t(a)) and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission (17 C.F.R. § 240.10b-5). From the outset of the litigation, Defendants have consistently denied any wrongdoing, liability or damages.

Lead Plaintiff alleged that Defendants failed to inform the market of a specific known risk to its NDA for LPCN 1021.  Specifically, Lead Plaintiff alleged that Defendants failed to disclose that the titration scheme (process of adjusting the dosing of a drug until optimal results are achieved) the Company tested during Phase 3 clinical trial testing of LPCN 1021 differed significantly from the titration scheme included in the LPCN 1021 NDA for intended real world practice.

Lead Plaintiff further alleged that on June 29, 2016, Lipocine announced via press release that it had received a Complete Response Letter ("CRL") from the FDA rejecting the LPCN 1021 NDA.  The press release revealed that "*the CRL identified deficiencies related to the dosing algorithm for the label. Specifically, the proposed titration scheme for clinical practice was significantly different from the titration scheme used in the Phase 3 trial leading to discordance in titration decisions between the Phase 3 trial and real-world clinical practice.*" On this news, shares of Lipocine fell $3.17 per share or over 50% to close at $3.10 per share on

3

June 29, 2016.

Defendants moved to dismiss the Amended Complaint. In a ruling from the bench on October 24, 2017, the Court denied Defendants' motion to dismiss in its entirety. Docket Nos. 56, 58. Thereafter, Lead Plaintiff served its first set of discovery requests upon Defendants. Defendants began a rolling production of documents, which Lead Plaintiff analyzed. Lead Plaintiff filed its motion for class certification on January 15, 2018. Docket Nos. 71-72.

After engaging in a full day mediation session with Jed Melnick, Esq. of JAMS, the parties reached an agreement in principle to settle the Action on February 14, 2018.

**B.    Summary Of Key Terms Of The Proposed Settlement**

**1.    Conditional Class Certification**

As noted above, Lead Plaintiff filed a motion for class certification on January 15, 2018. In connection with the Settlement, Defendants have consented to certification conditioned on final approval of the Settlement, of the following Class:

> All persons or entities that purchased Lipocine common stock between June 30, 2015 and June 28, 2016 (both dates inclusive) and who were damaged thereby. Excluded from the Class are Defendants, all current and former directors and officers of Lipocine during the Class Period, and any family member, trust, company, entity or affiliate controlled or owned by any of the excluded persons and entities referenced above.

As set forth in the class motion papers, Lead Plaintiff contends that each of the elements of Rule 23(a) and (b)(3) have been satisfied, conditional findings for which are set forth in the Order for Preliminary Approval.

**2.    Relief to Class Members and Release of Claims**

Defendants have agreed to pay, through their insurance carrier(s), $4,250,000 as described more fully in the Stipulation, in return for which all claims that have been, or could

have been asserted in the Amended Complaint against Defendants and "Released Parties" will be dismissed, barred and released.

The monies will be deposited in an escrow account maintained by Huntington National Bank and will be held in instruments or accounts backed by the full faith and credit of the United States Treasury.

If the Settlement is approved, none of the monies will revert to Lipocine or its insurance carriers. If the Settlement is not approved, or otherwise does not become effective, the monies other than costs of notice will revert.

### 3.    Class Notice and Settlement Administration

#### a)    Notice

Within 14 days of Preliminary Approval, a proposed Notice and Proof of Claim substantially in the form set forth in Exhibits A and D to the Proposed Order of Preliminary Approval will be mailed to each Class Member identified by records maintained by Lipocine's transfer agent, as well as institutional investors, and a list of banks and brokerage firms that usually maintain custodial accounts. A Summary Notice will also be published through the Internet, since that medium is most frequently accessed by investors, and is the most cost-effective.

The Notice describes in plain English the terms of the Settlement, the considerations that led Lead Counsel and Lead Plaintiff to conclude that the Settlement is fair and adequate, the Plan of Allocation, the maximum attorneys' fees award and expense reimbursement that may be sought, and the proposed Compensatory Awards. A copy of the Notice, Claims Form and Stipulation of Settlement will also be posted on a website maintained by the Settlement Administrator.

The Notice will also set forth the date of the Final Approval Hearing, as well as procedures for objecting to the foregoing matters or opting out of the Settlement. It is respectfully requested that the Final Approval Hearing be scheduled 100 days after entry of the Preliminary Approval Order. This will allow mailing to be completed within 14 days; Class Members to have over 60 days to consider their options and, if they choose, to file objections or opt out of the Class; the filing of Notice to Attorneys General under the Class Action Fairness Act, 28 U.S.C. § 1775; as well as time for the parties to respond to such objections.

The Notice will also set the date by which claims must be filed on the Settlement Fund, which Lead Counsel requests be 30 days after the Final Approval Hearing.

### b)    Administration

Following issuance of a Request for Proposal and competitive bids submitted by several well regarded class action claims administrators, Lead Counsel selected Strategic Claims Services ("Strategic") to administer the notice and process the claims for the Settlement.[3] Strategic is well known and highly experienced in the administration of securities fraud class action settlements.

### 4.    Papers in Support of the Settlement, Award of Lead Counsel Fees and Expenses, and Lead Plaintiff Compensatory Awards

No later than 21 days prior to the Final Hearing, Lead Counsel will submit papers in support of the Settlement and Plan of Allocation, as well as the request for the awards of attorney fees, expenses, and Lead Plaintiff Compensatory Awards. Those papers will detail reasons why the Settlement should be approved, as well as Lead Counsel's efforts under taken on behalf of the Class (including a breakdown of the time and hourly rates of each attorney who contributed

---

[3] A copy of the Agreement with Strategic will be submitted upon request for *in camera* inspection.

to the outcome).  Papers will also be filed setting forth the time and efforts undertaken by the Lead Plaintiff that also contributed to the outcome.

No less than 7 days prior to the Final Hearing, Lead Counsel may submit reply papers in support of the motion for final approval of Settlement, Plan of Allocation, request for an award of attorneys' fees and expenses or request for a reimbursement award to Lead Plaintiff.

### 5. *Objections*

Any Class Member who objects to the Settlement or related matters must do so 14 days prior to the Hearing, and must send copies of such objections to the Court as well as designated counsel for the Class and Defendants. Any Class Member who does not file a timely written objection to the Stipulation shall be foreclosed from seeking any adjudication or review of the Stipulation by appeal or otherwise.

To insure the legitimacy of any such objections, the Class Member must file documents evidencing Lipocine stock transactions, as well as submit to the jurisdiction of this court for possible deposition. These measures are intended to thwart "professional objectors" who have appeared from time to time in these actions.

### 6. *Opt Outs*

Any Class Member who wishes to be excluded must do so by written request accompanied by Lipocine transaction documentation, postmarked no later than 14 days prior to the Final Approval Hearing. The opt out must be sent to Lead Counsel, Defendants' Counsel, and the Settlement Administrator (but not the Court).

### 7. *Termination of the Settlement*

Defendants have the right to withdraw from the Settlement if Class Members owning a previously negotiated amount of shares elect to opt out of the Class. The threshold amount is set

forth in a Supplemental Agreement that will not be filed with the Court unless Defendants choose to exercise their right of withdrawal.

In the event that the Settlement is not approved by the Court, does not become Final due to any appeals or Defendants' withdrawal from the Settlement, the parties will return to their respective positions prior to the Settlement and the litigation will proceed apace.

8.    *No Admission of Liability*

By entering into the Stipulation, the Defendants do not admit liability and continue to deny that they engaged in any misconduct or violated the law.

III.    <u>PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE</u>

A.    **The Courts Favor Settlements Of Complex Class Actions**

The law favors settlement, particularly in class actions and other complex cases. *Newberg on Class Actions* (*Fourth*) (2002) § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). Due to the presumption in favor of settlement, and "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 05 CIV 10240 CM, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).  The Supreme Court has cautioned that in reviewing a proposed class settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc*., 450 U.S. 79, 88 n. 14 (1981).

Where, as here, the parties propose to resolve class action litigation through a class-wide settlement, they must request and obtain the Court's approval.  *See* Fed. R. Civ. P. 23(e). Approval of a proposed settlement is within the sound discretion of the Court. *See Rutter & Wilbanks Corp. v. Shell Oil Co*., 314 F.3d 1180, 1187 (10th Cir. 2002). District court review of a

class action settlement proposal is a two-step process. Newberg on Class Actions §13:12 (5th ed. 2015). The first step is a preliminary, pre-notification hearing to determine whether "notice of the proposed settlement should be sent to the class." *Id.* at §13:13; *Nakkahumpun v. Taylor*, No. 12-cv-01038-CMA, 2015 WL 6689399, at *3 (D. Colo. Nov. 3, 2015). "If the Court grants preliminary approval, it directs notice to class members and sets a hearing at which it will make a final determination on the fairness of the class action settlement." *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D 488, 492 (D. Kan. 2012). At the preliminary approval stage, the question is "whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006).

"The Court will ordinarily grant preliminary approval where the proposed settlement 'appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval.'" *In re Motor Fuel*, 286 F.R.D. at 492 (internal quotation omitted). "While the Court will consider the Tenth Circuit's factors in depth at the final approval hearing, they are a useful guide at the preliminary approval stage as well." *Nieberding v. Barrette Outdoor Living, Inc.*, No. 12-CV-2353-DDC-TJJ, 2015 WL 1645798, at *4 (D. Kan. Apr. 14, 2015).[4] The Tenth Circuit's factors include:

(1) whether the proposed settlement was fairly and honestly negotiated;

(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

---

[4] At the final approval hearing, the Court will have before it extensive papers submitted in support of the proposed Settlement and will be asked to make a determination as to whether the Settlement is fair, reasonable and adequate, under all of the circumstances. At this juncture, however, the Parties request only that the Court grant preliminary approval of the Settlement.

(3) whether the value of an immediate recovery out-weighs the mere possibility of future relief after protracted and expensive litigation; and

(4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter*, 314 F.3d at 1188; *Jones v. Nuclear Pharmacy, Inc*., 741 F.2d 322, 324 (10th Cir. 1984).

This procedure safeguards class members' procedural due process rights and enables the court to fulfill its role as the guardian of the class members' interests. *See Newberg*, § 11.25 (quoting *Manual for Complex Litigation* (*Second*) (1985)). Because there is no reason to doubt that the Settlement satisfies each of the foregoing prerequisites, the Court should preliminarily approve the Settlement.

## B. The Settlement Was Fairly and Honestly Negotiated

There is no doubt the Settlement was fairly and honestly negotiated. "The fairness of the negotiating process is to be examined 'in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves.'" *Ashley v. Reg'l Transp. Dist., Civil* No. 05-cv-01567-WYD-BNB, 2008 U.S. Dist. LEXIS 13069, at *15-16 (D. Colo. Feb. 11, 2008) (internal quotation omitted). Where a settlement results from arm's-length negotiations between experienced counsel, "the Court may presume the settlement to be fair, adequate, and reasonable." *Lucas*, 234 F.R.D. at 693. The proposed Settlement was the result of hard-fought, arm's-length negotiations between highly experience Lead Counsel and Defendants' Counsel with the assistance of an experienced mediator, Jed Melnick of JAMS. Counsel engaged in a full day in-person mediation eventually agreeing in principle to the Settlement and then worked over the subsequent weeks to finalize the terms of the Stipulation.

The negotiations, though collegial, were highly adversarial. They were informed in part by Lipocine's low stock price, the fact that the only source for recovery would likely be the

Company's insurance policies (a significant portion of which would be expended defending the lawsuit), and the fact that Lipocine's NDA, currently pending with the FDA, might not receive approval. The well-informed arms-length negotiations support the fairness of the Settlement reached. *Faircloth v. Certified Fin. Inc.*, No. CIV. A. 99-3097, 2001 WL 527489, at *4 (E.D. La. May 16, 2001) ("There is typically an initial presumption that a proposed settlement is fair and reasonable when it is the result of arms-length negotiations."). Moreover, if the terms of the proposed settlement are fair, courts generally will assume the negotiations were proper. *See In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 212.

In negotiating the Settlement, Lead Plaintiff had the benefit of attorneys (including Pomerantz's Managing Partner Jeremy A. Lieberman and Of Counsel Tamar A. Weinrib) who are highly experienced in complex litigation and familiar with the legal and factual issues of the case. In Lead Counsel's view, the Settlement provides substantial benefits to the Class, especially when considering the risk of recovering even less as the litigation continued and the insurance policies were further depleted.

Moreover, the Parties reached the Settlement only after vigorously litigating and conducting discovery, as discussed above. All of these circumstances support preliminary approval. *See In re Sprint Corp. ERISA Litig.,* 443 F. Supp. 2d 1249, 1260 (D. Kan. 2006) (approving settlement reached after parties had briefed class certification and engaged in extensive discovery). Accordingly, the Settlement is a product of informed, fair, and honest negotiations among experienced counsel and is deserving of preliminary approval.

## C.    The Outcome of the Litigation Is Uncertain

Lead Plaintiff believes that the claims asserted in the Amended Complaint are meritorious and that the evidence developed to date supports those claims. However, Lead Plaintiff also acknowledges that continuing the Action poses significant risks and additional

costs. The Parties have "reasonably conclude[d] that there are serious questions of law and fact that ... could significantly impact" the case, and thus, settlement is a favorable alternative to continued litigation. *Lucas,* 234 F.R.D. at 693-94; *see also In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009) ("doubt augurs in favor of settlement because settlement creates a certainty of some recovery. . . ").

The risk of material adverse findings against the class is not insignificant. When the Parties reached an agreement, the Court had not yet certified a class.  While Defendants had not yet filed their opposition to Lead Plaintiff's class certification motion, they undoubtedly would have raised vigorous arguments regarding the satisfaction of Rule 23, and market efficiency in particular.

Further, while Lead Plaintiff believes it could successfully establish all the elements of the securities fraud claims, scienter and falsity present complex issues of proof for the class. *See In re Qwest Commc'ns*, 625 F. Supp. 2d at 1138 ("The accounting issues, the scienter issues, the causation issues, and the damages issues all are complex and problematic. Presenting these issues to a jury would create substantial risks for all parties, including the plaintiffs."); *see also In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2013 WL 4547404, at *8 (D. Colo. Aug. 28, 2013) (preliminary approving settlement after noting the risks plaintiffs would face in certifying a class, surviving summary judgment and winning at trial).

Here, for example, Lead Plaintiff would need to prove that management knew or believed that the different titration schemes presented a significant risk to the approvability of the LPCN 1021 NDA.  Defendants have argued, and would likely continue to argue, that management had a good faith basis for believing that the FDA would approve the LPCN 1021 despite the differing titration schemes.

**D.      The Value of a Guaranteed Recovery Outweighs the Possibility of Relief after Protracted and Expensive Litigation**

The monetary value of the settlement must be compared to "the possibility of some greater relief at a later time, taking into account the additional risks and costs that go hand in hand with protracted litigation." *Gottlieb v. Wiles,* 11 F.3d 1004, 1015 (10th Cir. 1993).  The Settlement provides the Class with substantial relief, without the delay, expense, and uncertainty of further discovery, summary judgment, trial and post-trial proceedings all of which would have further reduced the remaining available insurance.  This case involves complex issues of securities law pursuant to Section 10(b) of the Securities and Exchange Act of 1934 (including, for example, market efficiency, loss causation, and damages) as well as the intricacies of the FDA's drug approval process.

The costs and risks associated with litigating this action to a verdict, not to mention through the inevitable appeal, would have been high, and the process would require many hours of the Parties and the Court's time and resources. *See Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 651 (N.D. Tex. 1978) (noting that the expense of trial can be "staggering," and carries with it the "distinct possibility" that the trial will "result in no recovery"). Finally, if taken to trial, this action would easily require an additional one to two years before a recovery, if any, was obtained for the Class. *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) ("'It is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members'").

The Settlement Amount provides a favorable recovery for the Settlement Class. *See, e.g., In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,* No. 02 MDL 1484 (JFK), 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) ("The Settlement Fund is approximately $40.3 million.

The Settlement thus represents a recovery of approximately 6.25% of estimated damages. This is 'at the higher end of the range of reasonableness of recovery in class actions securities litigations.'"); *McPhail v. First Command Fin. Planning, Inc.*, No. 05cv179-IEG- JMA, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding a $12 million settlement recovering 7% of estimated damages was fair and adequate); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) ($13.75 million settlement yielding 6% of potential damages after deducting fees and costs was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements") (citation omitted).

### E.    The Judgment of the Parties that the Proposed Settlement Is Fair, Adequate, and Reasonable

Lead Counsel and Defendants reached this Settlement after arm's-length negotiations and believe that it represents a good outcome for all Parties. Defendants will obtain a release of all claims asserted in the Complaint and will avoid the uncertainty associated with trial. Similarly, Lead Plaintiff and the Settlement Class are guaranteed monetary recovery and avoid the possibility of losing at class certification, summary judgment, or trial. Against this background, counsel's opinion "is entitled considerable weight" and supports approval of the Settlement. *See Ashley,* 2008 U.S. Dist. LEXIS 13069, at *21 (quoting *Lucas,* 234 F.R.D. at 695).

### IV.    THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise,' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *See Manual For Complex Litigation (Fourth)* §§ 21.632, 21.633 (2004). To satisfy due process, notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Here, the parties negotiated the form of the Notice of Pendency of Class Action and Proposed Settlement (the "Notice") to be disseminated to all persons who fall within the definition of the Class and whose names and addresses have been or can be identified from or through: (a) Lipocine's transfer records; and (b) via nominees which commonly hold securities in "street name" for the benefit of their customers who are the beneficial purchasers of the securities. Lead Plaintiff further proposes to supplement the mailed Notice with a Summary Notice published twice on national news wires, as well as to post Notice and all other relevant Settlement documents on the notice website previously authorized by this Court. The Notice and Summary Notice are attached to the Stipulation as Exhibits B and C.

The proposed Notice contains all of the information required by Rule 23 of the Federal Rules of Civil Procedure and by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Accordingly, in granting preliminary approval of the proposed Settlement, Lead Plaintiff respectfully requests that the Court also approve the proposed form and method of giving notice to the Class. As required by the PSLRA, the Notice specifies: (1) "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis"; (2) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this chapter, a statement from each settling party concerning the issue or issues on which the parties disagree"; (3) "a statement indicating which parties or counsel intend to make ... an application [for attorneys' fees or costs], the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought"; (4) "[t]he name, telephone number, and

address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members"; and (5) "[a] brief statement explaining the reasons why the parties are proposing the settlement." 15 U.S.C. §78u-4(a)(7).

The Notice also defines the class, describes the Plan of Allocation, summarizes the nature, history and status of the Action; identifies the Class' claims and issues, discusses the rights of persons who fall within the definition of the Class, and explains why Lead Plaintiff and Lead Counsel are proposing the Settlement. Further, the Notice includes detailed information on the process and requirements for requesting exclusion from the Class. Specifically, the Notice provides the name and mailing address for the Claims Administrator. For those Class Members who wish to participate in the Settlement, the Notice provides instructions on the timing and process for completing and submitting the Proof of Claim and Release form that accompanies the Notice. The Summary Notice also informs Class Members that copies of the Notice and Proof of Claim and Release form may be obtained by writing the Claims Administrator, or by accessing the documents on the notice website. Finally, the Notice sets forth the date, time, and place of the final approval hearing, along with the procedures for commenting on the Settlement and includes the postal address for the Court, Lead Counsel, and counsel for Defendants.

Thus, the proposed Notice to be sent to the Class provides all of the information required by the PSLRA.  The Court should approve the proposed form of Notice and direct that notice be given to the Class as proposed by the parties.

## V.    PROPOSED SCHEDULE OF EVENTS

The Lead Plaintiff proposes the following schedule of events in connection with the Settlement Hearing as set forth in the Preliminary Approval Order filed herewith:

| Event | Deadline for Compliance |
|---|---|
| Date for Settlement Hearing. | At least 100 days after the Court preliminarily |

| | approves the Settlement |
|---|---|
| Mailing of Notice and Proof of Claim and Release. | No later than 14 calendar days after the entry of Preliminary Approval Order. (the "Notice Date") |
| Publication of Summary Notice. | No later than 21 calendar days after the Notice Date |
| Filing deadline for requests for exclusion. | Postmarked no later than 14 calendar days prior to the Final Settlement Hearing. |
| Date for Lead Plaintiff to file and serve papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | No later than 21 calendar days prior to the Final Settlement Hearing. |
| Filing deadline for objections. | No later than 14 calendar days prior to the Settlement Hearing. |
| Date for Lead Plaintiff to file reply papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | Seven (7) calendar days prior to the Final Settlement Hearing. |
| Date for Claims to be Filed | No later than 30 days after the Final Hearing |

## VI.    CONCLUSION

In light of the foregoing, Lead Plaintiff respectfully request that the Court enter an Order: (1) preliminarily approving the Settlement; (2) certifying the Class for Settlement purposes only; (3) certifying Lead Plaintiff as Class Representative and Lead Counsel as Class Counsel; and (4) setting a date for a Settlement Hearing and deadlines for the mailing and publication of the Notices, the filing of Settlement Class Member objections, the filing of Settlement Class Member opt-out notices, and the filing of Lead Counsel's application for attorneys' fees and expenses and for an incentive award to Lead Plaintiff.

Dated: March 15, 2018

Respectfully submitted,

**POMERANTZ LLP**

/s/ *Tamar A. Weinrib*

Jeremy A. Lieberman (pro hac vice)
Marc I. Gross (pro hac vice)
Tamar A. Weinrib (pro hac vice)

600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile: 212-661-8665

**POMERANTZ LLP**
Patrick V. Dahlstrom (pro hac vice)
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: 312-377-1181
Facsimile: 312-377-1184

*Counsel for Plaintiff*