IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IN RE LIPOCINE INC. SECURITIES LITIGATION<br><br>This Document Relates To: All Actions | )<br>)  Case No. 2:17CV00182 DB<br>)<br>)<br>)  Judge Dee Benson<br>)<br>) |

## LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Jeremy A. Lieberman (*pro hac vice*)
Marc I. Gross (*pro hac vice*)
Tamar A. Weinrib (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile:  212-661-8665

**POMERANTZ LLP**
Patrick V. Dahlstrom (*pro hac vice*)
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: 312-377-1181
Facsimile:  312-377-1184

*Lead Counsel*

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................ 1

II.     SUMMARY OF THE LITIGATION AND SETTLEMENT ............................................ 3

        A.      Procedural History Of The Litigation .................................................................. 3

III.    ARGUMENT ............................................................................................................... 4

        A.      The Settlement Satisfies the Criteria for Final Approval ...................................... 4

                1.      The Proposed Settlement was Achieved Only After Arm's-Length
                        Negotiations by Capable and Fully Informed Counsel and Is Not
                        the Result of Collusion ................................................................................. 6

                2.      The Strengths of Lead Plaintiff's Case and the Risks of Establishing
                        Liability ...................................................................................................... 7

                3.      The Settlement Amount Relative to the Most Realistic Recoverable
                        Damages ...................................................................................................... 9

                4.      The Parties' Judgment that the Settlement Is Fair and Reasonable ............... 10

                5.      Class Reaction to Date Supports Approval ................................................... 11

        B.      The Plan of Allocation Is Fair and Reasonable and Should Be Approved ........... 12

        C.      The Court Should Affirm Its Certification of the Settlement Class ...................... 13

IV.     CONCLUSION ........................................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597 (WHP), 2004 WL 2750089
   (S.D.N.Y. Dec. 2, 2004).....................................................................................................8

*Alvarado Partners L.P., v. Mehta*,
   723 F. Supp. 540 (D. Colo. 1989)......................................................................................9

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) ...........................................................................................9

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, MDL No. 1500, 02 Civ. 5575
   (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)...........................................................8

*Belote v. Rivet Software, Inc.*,
   No. 12-cv-02792-WYD-MJW, 2014 WL 3906205 (D. Colo. Aug. 11, 2014)..................6, 11

*Campbell v. C.R. England, Inc.*,
   No. 2:13-cv-00262, 2015 WL 5773709 (D. Utah Sept. 30, 2015) ..................................5, 6, 7

*City of P'Ship Co. v. Jones Intercable, Inc.*,
   213 F.R.D. 576 (D. Colo. 2002) .......................................................................................13

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) .............................................................................................7

*Gottlieb v. Wiles*,
   11 F.3d 1004 (10th Cir. 1993) ..................................................................................5, 7, 9, 10

*Grady v. De Ville Motor Hotel, Inc.*,
   415 F.2d 449 (10th Cir. 1969) ...........................................................................................4

*Holden v. Burlington N., Inc.*,
   665 F. Supp. 1398 (D. Minn. 1987) 495 F.2d 448 (2d Cir. 1974)....................................10

*In re Crocs, Inc. Sec. Litig.*,
   306 F.R.D. 672 (D. Colo. 2014) ...............................................................................5, 6, 12

*In re Crocs, Inc. Sec. Litig.*,
   No. 07-cv-02351-PAB-KLM, 2013 WL 4547404 (D. Colo. Aug. 28, 2013) .....................8

*In re King Res. Co. Sec. Litig.*
   420 F. Supp. 610 (D. Colo. 1976).......................................................................................9

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   No. 02 MDL 1484 (JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)...................................10

*In re New Mexico Nat. Gas Antitrust Litig.*,
   607 F. Supp. 1491 (D. Colo. 1984)...............................................................................5, 6, 11

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...............................................................................10

*In re Qwest Commc'ns*,
   625 F. Supp. 2d at 1138 ...........................................................................................................8

*Ingram v. The Coca-Cola Co.*,
   200 F.R.D. 685 (N.D. Ga. 2001)..............................................................................................6

*Jones v. I.Q. Data Int'l, Inc.*,
   No. 1-14-cv-00130-PJK, 2015 WL 5704016 (D.N.M. Sept. 23, 2015)................................4, 5

*Jones v. Nuclear Pharmacy, Inc.*,
   741 F.2d 322 (10th Cir. 1984) .....................................................................................5, 7, 9, 10

*Law v. Nat'l Collegiate Athletic Ass'n*,
   108 F. Supp. 2d 1193 (D. Kan. 2000).....................................................................................12

*Lucas v. Kmart Corp.*,
   234 F.R.D. 688 (D. Colo. 2006) .............................................................................................12

*Make A Difference Found., Inc. v. Hopkins*,
   No. 10-cv-00408-WJM-MJW, 2012 WL 917283 (D. Colo. Mar. 19, 2012).........................11

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*,
   No. 94 Civ. 5587, 2003 WL 21136726 (S.D.N.Y. May 15, 2003).........................................11

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ............................................................................................8, 9

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
   314 F.3d 1180 (10th Cir. 2002) ................................................................................................5

*Ryskamp v. Looney*,
   No. 10-cv-00842, 2012 WL 3397362 (D. Colo. Aug. 14, 2012)............................................11

*Shaw v. Interthinx, Inc.*,
   No. 13-cv-01229-REB-NYW, 2015 WL 1867861 (D. Colo. Apr. 22, 2015) .........................5

*Tennille v. W. Union Co.*,
   809 F.3d 555 (10th Cir. 2015) ..................................................................................................9

*Williams v. First Nat'l Bank*,
    216 U.S. 582 (1910)............................................................................................4

**Statutes**

15 U.S.C. § 78j(b) ............................................................................................3

15 U.S.C.§ 78t(a)) ............................................................................................3

**Rules**

Fed. R. Civ. P. 23(a) and (b)(3) ....................................................................14

Fed. R. Civ. P. 23(e) ........................................................................................5

**Other Authorities**

17 C.F.R. § 240.10b-5.......................................................................................3

Court-appointed Lead Plaintiff Lipocine Investor Group (consisting of members Quantum Partners, Ltd., DPC Partners, Ltd. and John William Burke) (on behalf of themselves and each of the Class Members) ("Lead Plaintiff") moves for final approval of the proposed settlement of the above-captioned action against Defendants Lipocine, Inc. ("Lipocine"), Mahesh V. Patel ("Patel"), and Morgan R. Brown ("Brown") (collectively, "Defendants") on the terms and conditions set forth in the Stipulation of Settlement dated March 9, 2018 ("Stipulation").[1] The Settlement resolves the Settlement Class's claims against all Defendants in exchange for $4,250,000.

## I.    INTRODUCTION

After almost two years of litigation, Lead Plaintiff, through Lead Counsel, proposes for this Court's final approval: (1) a settlement and dismissal of this action against Defendants in exchange for the payment, through Defendants' insurance carrier(s) $4,250,000 in cash (the "Settlement"); and (2) a Plan of Allocation for the disbursement of the proceeds among Settlement Class members.[2]

As set forth herein, the settlement is not only a fair, reasonable and adequate result for the Settlement Class, as is legally required, but Lead Plaintiff and Lead Counsel believe that it is an excellent result given Lipocine's precarious financial condition, as reflected in the fact that its stock price is trading at $1.19[3] per share, that the cost of litigation to date has reduced the amount of available insurance coverage, and the uncertainty regarding whether the FDA will ever approve LPCN 1021 given that the Company received a second Complete Response Letter from the FDA, as announced on May 9, 2018. Despite these "collection" hurdles, Lead Plaintiff was

---

[1] The Stipulation was previously filed with the Court. ECF No. 74. All terms not defined herein have the same definitions as stated in the Stipulation.

[2] A memorandum in support of Lead Counsel's request for an award of attorneys' fees is filed concurrently herewith.

[3] Closing price on June 4, 2018.

able to secure a recovery representing at least 13.6% of the most likely recoverable damages, which is well within the range of reasonableness for class action settlements.[4] Moreover, given the likelihood that less than 100% of Class Members will file claims, the actual percentage of recovery is even higher.

Based upon Lead Counsel's investigation of the Settlement Class's claims, past experience in similar cases, and extensive disputes between the parties concerning class certification, damages, and liability, continuing the litigation would have only drained the resources available to compensate investors and substantially delayed payment of any recovery.

This Preliminary Approval Order certified the following Settlement Class:

All Persons (including, without limitation, their beneficiaries) who purchased all persons who purchased or otherwise acquired Lipocine common stock between June 30, 2015 and June 28, 2016, both dates inclusive. Excluded from the Class are (i) Defendants, all current and former directors and officers of Lipocine during the Class Period, and any family member, trust, company, entity or affiliate controlled or owned by any of the excluded persons and entities referenced above, (ii) Opt-Outs; and (iii) Persons who have no compensable damages.

Thereafter the Notice of the Settlement and Proof of Claims were mailed to 8,621 potential Class Members and nominees, and a Summary Notice was published on April 23, 2018 in *Investor's Business Daily* and over *Globe Newswire. See* Weinrib Decl., Exhibit 1, Evans Decl. at ¶¶ 6, 10. The deadline for filing objections and requests for exclusion is June 11, 2018.

Thus far, no objections and no requests for exclusion have been received by Lead Counsel or the Claims Administrator. *Id.* at ¶ 12-13.

The hearing on these matters has been scheduled for July 2, 2018.

---

[4] This estimate is based on the decline in Lipocine's share price on June 29, 2016, following the Company's announcement that it had received a Complete Response Letter from the FDA rejecting the LPCN 1021 NDA, multiplied by the number of Lipocine shares purchased by Class Members during the Class Period and still held by as of that date.

## II.   SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.  Procedural History Of The Litigation

This Action was first filed on July 1, 2016 in the District of New Jersey. By order dated December 2, 2016, the Court appointed the Lipocine Investor Group (consisting of members Quantum Partners, Ltd., DPC Partners, Ltd. and John William Burke) as Lead Plaintiff and Pomerantz LLP as Lead Counsel. (Docket No. 21). An Amended Complaint was then filed on April 27, 2017 (Docket No. 48), asserting claims against Defendants on behalf of Lipocine investors during the Class Period. During that time frame, Lipocine had sought to obtain FDA approval to market its lead drug product, LPCN 1021, an oral testosterone replacement therapy designed for twice a day dosing.

The Amended Complaint charged that Defendants conduct violated Sections 10(b) and 20(a) of the Securities Exchange Act (15 U.S.C. §§ 78j(b), and 78t(a)) and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission (17 C.F.R. § 240.10b-5). From the outset of the litigation, Defendants have consistently denied any wrongdoing, liability or damages.

Lead Plaintiff alleged that Defendants failed to inform the market of a specific known risk to its NDA for LPCN 1021.  Specifically, Lead Plaintiff alleged that Defendants failed to disclose that the titration scheme (process of adjusting the dosing of a drug until optimal results are achieved) the Company tested during Phase 3 clinical trial testing of LPCN 1021 differed significantly from the titration scheme included in the LPCN 1021 NDA for intended real world practice.

Lead Plaintiff further alleged that on June 29, 2016, Lipocine announced via press release that it had received a Complete Response Letter ("CRL") from the FDA rejecting the LPCN 1021 NDA.  The press release revealed that "the CRL identified deficiencies related to the

dosing algorithm for the label. Specifically, the proposed titration scheme for clinical practice was significantly different from the titration scheme used in the Phase 3 trial leading to discordance in titration decisions between the Phase 3 trial and real-world clinical practice."   On this news, shares of Lipocine fell $3.17 per share or over 50% to close at $3.10 per share on June 29, 2016.

Defendants moved to dismiss the Amended Complaint.  In a ruling from the bench on October 24, 2017, the Court denied Defendants' motion to dismiss in its entirety.  Docket Nos. 56, 58. Thereafter, Lead Plaintiff served its first set of discovery requests upon Defendants. Defendants began a rolling production of documents, which Lead Plaintiff analyzed.  Lead Plaintiff filed its motion for class certification on January 15, 2018.  Docket Nos. 71-72.

After engaging in a full day mediation session with Jed Melnick, Esq. of JAMS, the parties reached an agreement in principle to settle the Action on February 14, 2018 and filed the Stipulation with this Court on March 15, 2018 (ECF No. 74). This Court issued an order preliminarily approving the settlement on March 28, 2018 (ECF. No. 76).

## III.   ARGUMENT

### A.  The Settlement Satisfies the Criteria for Final Approval

The settlement of disputed claims is favored as a matter of public policy, *see, e.g., Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *Grady v. De Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969), particularly in the context of class-action litigation. *See, e.g., Jones v. I.Q. Data Int'l, Inc.*, No. 1-14-cv-00130-PJK, 2015 WL 5704016, at *1 (D.N.M. Sept. 23, 2015) ("We are mindful of the strong judicial policy in favor of settlement, particularly in the class action context.")[5]. For these reasons, in evaluating the fairness of the settlement, courts

---

[5] Unless otherwise noted, all internal quotations and citations are omitted and all emphasis is added.

should neither decide the merits of the case, nor substitute their judgment for that of the parties who negotiated the settlement. *Shaw v. Interthinx, Inc.*, No. 13-cv-01229-REB-NYW, 2015 WL 1867861, at *2 (D. Colo. Apr. 22, 2015).

Approval of a proposed settlement is within the sound discretion of the Court. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002); *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). A class action settlement is entitled to final approval under Fed. R. Civ. P. 23(e) where it is "fair, reasonable and adequate." *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993); *Jones*, 741 F.2d at 324 ("the trial court must approve a settlement if it is fair, reasonable and adequate"). In both *Gottlieb* and *Jones*, the Tenth Circuit identified four factors that a district court should consider in assessing whether a proposed class action settlement is fair, reasonable and adequate:

(i)   whether the proposed settlement was fairly and honestly negotiated;

(ii)  whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(iii) whether the value of immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(iv)  the judgment of the parties that the settlement is fair and reasonable.

*Gottlieb*, 11 F.3d at 1014; *Jones*, 741 F.2d at 324. *See also Campbell v. C.R. England, Inc.*, No. 2:13-cv-00262, 2015 WL 5773709, at *5 (D. Utah Sept. 30, 2015); *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 690 (D. Colo. 2014). Additional relevant factors may include: (i) the risk of establishing damages at trial; (ii) the extent of discovery and the current posture of the case; (iii) the range of possible settlement; and (iv) the reaction of class members to the proposed settlement. *In re New Mexico Nat. Gas Antitrust Litig.*, 607 F. Supp. 1491, 1504 (D. Colo. 1984);

5

*Belote v. Rivet Software, Inc.*, No. 12-cv-02792-WYD-MJW, 2014 WL 3906205, at *2 (D. Colo. Aug. 11, 2014) (citing *New Mexico*).

### 1. The Proposed Settlement was Achieved Only After Arm's-Length Negotiations by Capable and Fully Informed Counsel and Is Not the Result of Collusion

Where a settlement results from arms-length negotiations between experienced counsel, the Court may presume that the settlement is reasonable. *Campbell*, 2015 WL 5773709, at *5 ("Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable.") (internal quotation omitted). The Settlement here is the product of such arm's-length, informed, noncollusive negotiations, which occurred between the Parties with the assistance and guidance of experienced mediator Jed Melnick. *See* Weinrib Decl. ¶¶ 11, 27-30.

Throughout the settlement negotiations, the Parties were represented by counsel with extensive experience in securities litigation. Lead Counsel has many years of experience in litigating securities fraud class actions and negotiating class action settlements that have been approved by courts throughout the country. *See* Weinrib Decl., Exhibit 2 (Pomerantz Decl., Exhibit C).

The use of experienced mediator Jed Melnick further demonstrates the absence of collusion. *See Crocs*, 306 F.R.D. at 690-92; *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("Parties colluding in a settlement would hardly need the services of a neutral third party to broker their deal.").

Moreover, Lead Counsel's investigation had provided a thorough understanding of the strengths and weaknesses of the case at the time of the settlement discussions. Lead Counsel fully briefed a motion to dismiss and a motion for class certification. Weinrib Decl., ¶¶ 21-26. Lead Counsel also engaged in extensive negotiations with defense counsel regarding discovery matters and reviewed key documents produced by Defendants prior to engaging in mediation.

*See New Mexico*, 607 F. Supp. at 1504 (citing the extent of discovery and current posture of the case as an additional factor to be considered at final approval). There is absolutely no evidence indicating that the Settlement is anything but the product of informed, fair, and honest negotiations among experienced counsel.

The negotiations, though collegial, were adversarial.  They were informed in part by Lipocine's extremely low stock price and precarious financial condition, and the fact that the only source for recovery would likely be the Company's insurance policies (a significant portion of which had already been expended defending the lawsuit).

In negotiating the Settlement, Lead Plaintiffs had the benefit of attorneys (including Pomerantz's Managing Partner Jeremy A. Lieberman and Of Counsel Tamar A. Weinrib) who are highly experienced in complex litigation and familiar with the legal and factual issues of the case.

In Lead Counsel's view, the Settlement provides substantial benefits to the Class, especially when considering the risk of recovering even less as the litigation continued and the insurance policies were further depleted.

### 2.  The Strengths of Lead Plaintiff's Case and the Risks of Establishing Liability

The second *Gottlieb/Jones* factor is whether there were "serious questions of law and fact . . . placing the ultimate outcome of litigation in doubt." *Gottlieb*, 11 F.3d at 1014; *Jones*, 741 F.2d at 324; *see also* Campbell, 2015 WL 5773709, at *5. Although Lead Counsel believes that this is a strong case it nevertheless recognizes that certain risks and uncertainties exist, and are

also well aware that numerous other securities class actions have been prosecuted in the belief that they were meritorious, only to lose at summary judgment, at trial, or on appeal.[6]

Prior to the Settlement being reached, Lead Plaintiff had filed a motion for class certification. Although Defendants had not yet filed their opposition when mediation took place, undoubtedly they would have vigorously opposed Lead Plaintiff's motion.  While Lead Plaintiff was confident in its motion, the Court could have declined to certify the class.

Securities class actions present hurdles to proving liability that are particularly difficult for plaintiffs to meet. *See ., In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, MDL No. 1500, 02 Civ. 5575 (SWK), 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation"); *In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597 (WHP), 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004) (finding that issues present in a securities action presented significant hurdles to proving liability).

Further, while Lead Plaintiff believes it could successfully establish all the elements of the securities fraud claims, scienter and falsity present complex issues of proof for the class. *See In re Qwest Commc'ns*, 625 F. Supp. 2d at 1138 ("The accounting issues, the scienter issues, the causation issues, and the damages issues all are complex and problematic. Presenting these issues to a jury would create substantial risks for all parties, including the plaintiffs."); *see also In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2013 WL 4547404, at *8 (D. Colo. Aug. 28, 2013).

---

[6] Many plaintiffs have won at trial, only to lose on appeal. *See*, *e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing jury verdict awarding investors $2.46 billion on loss causation and damages grounds and remanding for a new trial on these issues); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant).

Here, for example, Lead Plaintiff would need to prove that management knew or believed that the different titration schemes presented a significant risk to the approvability of the LPCN 1021 NDA.  Defendants have argued, and would likely continue to argue, that management had a good faith basis for believing that the FDA would approve the LPCN 1021 despite the differing titration schemes.

### 3.   The Settlement Amount Relative to the Most Realistic Recoverable Damages

The third *Gottlieb*/*Jones* factor is whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. *Gottlieb*, 11 F.3d at 1014; *Jones*, 741 F.2d at 324. In evaluating this factor, it is important to keep in mind, as many courts have noted, that "[i]t has been held prudent to take 'a bird in the hand instead of a prospective flock in the bush.'" *Alvarado Partners L.P., v. Mehta,* 723 F. Supp. 540, 547 (D. Colo. 1989) (citing *West Vir. v. Chas. Pfizer & Co*, 314 F. Supp. 710, 740, 743 (S.D.N.Y. 1970); *see also Tennille v. W. Union Co.*, 809 F.3d 555, 558-59 (10th Cir. 2015); *In re King Res. Co. Sec. Litig.* 420 F. Supp. 610, 625 (D. Colo. 1976).

In considering whether to enter into the Settlement, Lead Plaintiff weighed the value of an immediate guaranteed settlement against the challenges and significant proceedings that remained ahead, such as: (i) fact depositions; (ii) expert reports, depositions, and *Daubert* motions contesting the qualifications and opinions of each expert; (iii) summary judgment briefing; (iv) trial preparation, including numerous *in limine* motions; (v) trial; and (vi) appeals. While Lead Plaintiff strongly believed it would ultimately prevail in the litigation, it was also cognizant of the fact that success is never guaranteed. *See Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court

opinion); *Robbins*, 116 F.3d at 1448-49. (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant).

On the other hand, the guaranteed Settlement of $4.25 million represents a very meaningful recovery of the damages allegedly suffered by the class. This recovery, which represents 13.6% of most likely recoverable damages, falls well within the range of approval, and courts have generally approved settlements in cases since the PSLRA that recover a comparable or smaller percentage of maximum damages. *See, e.g., In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (settlement yielding 6% of potential damages was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,* No. 02 MDL 1484 (JFK), 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (finding that a recovery representing 6.25% of damages was "at the higher end of the range of reasonableness of recovery in class actions securities litigations"); *Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1414 (D. Minn. 1987) 495 F.2d 448 (2d Cir. 1974) ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."). According to Cornerstone Research, between 2006 and 2015, the median percentage of investor losses recovered in securities class-action settlements ranged between 1.8% and 2.9%.

### 4.   The Parties' Judgment that the Settlement Is Fair and Reasonable

The final *Gottlieb/Jones* factor – the judgment of the parties that the settlement is fair and reasonable – also weighs in favor of approving the Settlement. *Gottlieb*, 11 F.3d at 1014; *Jones*, 741 F.2d at 324. Lead Plaintiff supports the Settlement, and Lead Counsel believes that the Settlement provides an excellent recovery to the Settlement Class. Lead Counsel's opinion is

based upon extensive knowledge of the facts of the case and the legal issues facing the class, as well as an analysis of the strengths and weaknesses of the case. After such an analysis, Lead Counsel concluded that the Settlement is fair, just, and adequate to Lead Plaintiff and the Settlement Class.

As evidenced by the extensive briefing of the motion to dismiss and the motion for class certification, as well as the review of key documents produced in discovery, Lead Counsel is extremely well versed in the facts and legal issues to be tried in this case. Given Lead Counsel's extensive experience and success in prosecuting securities class actions, Weinrib Decl., Ex. 2 (Pomerantz Decl., Exhibit C thereto), its judgment is entitled to substantial weight. *See, e.g., Belote* v. *Rivet Software, Inc.* No. 12-2792, 2014 WL 3906205, at *4 ( D. Colo. Aug. 11, 2014) ("[c]ounsels' judgment as to the fairness of the agreement is entitled to considerable weight.") (citing *Lucas v. Kmart Corp.*, 234F.R.D. 688, 695 (D. Colo. 2006)).

### 5. Class Reaction to Date Supports Approval

The absence of valid objections or investors electing to opt out of the Settlement provides evidence of Class members' approval of the terms of the Settlement and their desire to share in the proceeds thereof. *See RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 Civ. 5587, 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003). Pursuant to the preliminary approval order, and as stated in the Notice, Class members were notified that they have until June 11, 2018, to request exclusion from the Settlement class or to object to the Settlement. Weinrib Decl., Exhibit 1 (Evans Decl. at ¶ 12-13, Exhibit A). To date, Notice had been furnished to approximately 8,621 potential members of the Class. Weinrib Decl. ¶ 14, 34; Exhibit 1 (Evans Decl. at ¶ 7). As of the date of filing of these papers, less than one week prior to the deadline to object or opt-out, there have been no objections and no exclusions. *See* Weinrib Decl. ¶¶ 14, 26, Exhibit 1 (Evans Decl. at ¶ 12-13). *See also see New Mexico*, 607 F. Supp. At 1504 (citing the

reaction of class members as an additional factor to be considered at final approval). While not dispositive, if only a small number of objections are received, it is indicative of the adequacy of the settlement. *Ryskamp v. Looney*, No. 10-cv-00842, 2012 WL 3397362, at \*4 (D. Colo. Aug. 14, 2012) (giving significant weight to the fact only two objections were received); *Make A Difference Found., Inc. v. Hopkins*, No. 10-cv-00408-WJM-MJW, 2012 WL 917283, at \*3 (D. Colo. Mar. 19, 2012) (finding that only three objections to the settlement representing 47,000 class members "weigh[ed] heavily in favor of approval of the derivative litigation settlement").

Lead Counsel will file reply papers, which will address any objections or requests for exclusion received after this submission.

### B. The Plan of Allocation Is Fair and Reasonable and Should Be Approved

Lead Plaintiff has proposed a plan to allocate the net proceeds of the Settlement among Settlement Class Members, which was reported in the Notice mailed to Class Members. The objective of the proposed Plan of Allocation is to equitably distribute the Settlement proceeds to those Settlement Class Members who suffered economic losses as a result of the Defendants' allegedly false and misleading statements. The $4.25 million in cash, less attorneys' fees and expenses, notice and administration expenses, and any tax expenses payable from the Settlement Fund (the "Net Settlement Fund"), will be distributed to Authorized Claimants in accordance with the Plan of Allocation.

"Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." *Law v. Nat'l Collegiate Athletic Ass'n*, 108 F. Supp. 2d 1193, 1196 (D. Kan. 2000) (internal quotation omitted); *see also Crocs*, 306 F.R.D. at 692 (applying standard). "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Lucas*, 234 F.R.D. at

12

695 (quoting *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001)). Generally, "a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." *Crocs*, 306 F.R.D. at 692.

The proposed Plan of Allocation is fair, and reimburses class members based on the type and extent of their injuries. The Plan of Allocation provides for distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based upon each Authorized Claimant's Recognized Loss. Weinrib Decl. ¶¶ 39-42; Notice at 10.

Here, the proposed Plan of Allocation related to the Action is rational and consistent with Lead Plaintiffs' theory of the case.  The Plan was formulated by Lead Counsel, in consultation with damages experts, with the goal of reimbursing the class members in a fair and reasonable manner, and reviewed by Lead Plaintiffs.  For these reasons, Lead Counsel believes the Plan of Allocation fairly compensates the class members and should be approved.

**C.  The Court Should Affirm Its Certification of the Settlement Class**

Courts within the Tenth Circuit have long articulated a strong policy favoring class actions in securities fraud actions. *City of P'Ship Co. v. Jones Intercable, Inc.*, 213 F.R.D. 576, 580-81 (D. Colo. 2002) (citing *In re Intelcom Grp, Inc., Sec. Litig.*, 169 F.R.D. 142, 144 (D. Colo. 1996) ("[S]ecurities claims are particularly well suited for class action status because they allow for the policies behind the securities laws to be enforced in circumstances where there are numerous investors with small individual claims that would otherwise effectively be barred from litigation.")).

In presenting the proposed Settlement to the Court for preliminary approval, Lead Plaintiff requested that the Court certify the Settlement Class for settlement purposes so that notice of the proposed Settlement, the final approval hearing, and the rights of class members to request exclusion, object, or submit proofs of claim could be issued. In its Preliminary Approval

Order, (ECF No. 76), this Court preliminarily certified the Settlement Class. Nothing has changed to alter the propriety of the Court's certification and, for all the reasons stated in the Lead Plaintiff's Unopposed Motion Preliminarily Approving Class Action Settlement (ECF No. 73), and Lead Plaintiff's briefing in connection with the motion for class certification (ECF Nos. 71-72), incorporated herein by reference, Lead Plaintiff now requests that the Court reiterate its prior certification (i) of the Settlement Class for purposes of carrying out the Settlement pursuant to Fed. R. Civ. P. 23(a) and (b)(3); and (ii) of Lead Plaintiff as Class Representative, as well as its appointment of Lead Counsel as Class Counsel for the Settlement Class.

## IV.   **CONCLUSION**

For the reasons stated herein and the Weinrib Declaration, Lead Plaintiff respectfully requests that the Court grant final approval of the proposed Settlement and Plan of Allocation. Proposed orders will be filed after the deadlines for seeking exclusion and objecting have passed.

Dated: June 4, 2018

Respectfully submitted,

**POMERANTZ LLP**

/s/ *Tamar A. Weinrib*

Jeremy A. Lieberman (pro hac vice)
Marc I. Gross (pro hac vice)
Tamar A. Weinrib (pro hac vice)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile: 212-661-8665

**POMERANTZ LLP**

Patrick V. Dahlstrom (pro hac vice)
10 South LaSalle Street, Suite 3505
Chicago, IL 60603

14

Telephone: 312-377-1181
Facsimile: 312-377-1184

***Counsel for Plaintiff***

## CERTIFICATE OF SERVICE

I certify that on this the 4th day of June, 2018, I caused a true copy of **LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** to be filed with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all counsel who have entered an appearance in this action.

/s/Tamar A. Weinrib
Tamar A. Weinrib